UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**UNITED STATES OF AMERICA,**

  *Plaintiff*,

v.                                                                    Case No. SA-22-CR-00411-JKP

**(1) STEVEN DANIEL WESTE,**

  *Defendant*.

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Steven Daniel Weste's Motion to Suppress and the U.S. Government's response to the motion. *See* ECF Nos. 24, 29. The Court held a hearing on the motion on July 19, 2023. *See* ECF No. 36. Weste asks the Court to suppress evidence from his cell phone because an FBI agent searched his phone before obtaining a warrant, which Weste says violates his Fourth Amendment right to be free from unreasonable searches and seizures. After consideration of the parties' briefings, evidence, oral argument, and the applicable law, the Court finds the evidence should not be suppressed because Weste did not have a reasonable expectation in the phone and the evidence would have been inevitably discovered in the absence of the FBI's warrantless searches. The Court, therefore, **DENIES** the motion.

### BACKGROUND

Defendant Daniel Steven Weste is charged with cyberstalking and communicating threats to injure, in violation of 18 U.S.C. §§ 2261A(2)(B) and 875(c). Specifically, Weste is charged with harassing Amanda Stewart Rice and Zachary Rice by sending emails to their employers and the media accusing Zachary Rice of rape, including emails threatening to kill Zachary Rice. These recent charges follow Weste's January 4, 2010 conviction, after a federal jury trial, to 15

years imprisonment for transmitting threats to kill others and making false statements to federal agents, in violation of 18 U.S.C. §§ 875 and 1001. Weste's 2010 conviction was related to Weste's harassment, during 2006 and 2007, of Amanda Stewart Rice and people associated with her. Weste, a high school teacher, was convicted of harassing Amanda Stewart Rice, a former student who dated Weste, by sending over 1,000 harassing and threatening emails to her family members and other associates. Weste was nearing the end of his term of confinement for the 2010 conviction when, on July 27, 2021, he was transferred to Crosspoint Residential Reentry Center in San Antonio, Texas. While residing at the Crosspoint halfway house, Weste obtained access to a cell phone and the internet. As part of the standard intake procedure, Weste signed document acknowledging Crosspoint staff could search his property "at any time."

Within months of Weste obtaining a cell phone, Amanda Stewart Rice and her husband, Zachary Rice, received forwarded copies of harassing and threatening emails sent to their employers and the media. Amanda Stewart Rice recognized the tone and word choice from Weste's 2006-07 emails, and contacted the Government to report her suspicion that Weste was again sending threatening emails. FBI Special Agent Steven Smith, who worked on the case that led to Weste's 2010 conviction, reviewed the 2021 emails and agreed with Amanda Stewart Rice's assessment that they resembled the 2006-07 emails. On October 18, 2021, Crosspoint staff confiscated Weste's cell phone and transferred him from the Crosspoint halfway house to a secure Bureau of Prisons (BOP) facility, Karnes Correctional Center.

Assistant U.S. Attorney Bettina Richardson advised FBI Agent Smith to get a warrant to search the phone. Before Agent Smith got a warrant, a Crosspoint manager gave him the phone and showed him how to open it. Once opened, Agent Smith did a cursory search of the phone and found an email receipt for Norton VPN software frequently used by cybercriminals to mask

the user's IP address. That evening, because the FBI evidence room was closed, Agent Smith took the phone home, at which point he conducted a second search of Weste's phone, finding some identifying information and web browser history. Agent Smith then requested a search warrant, and on November 17, 2021, the magistrate judge approved the request. In his warrant affidavit offered to establish probable cause, Agent Smith referenced the Norton VPN software, but not his findings from the second search. Agent Smith also detailed similarities between Weste's 2006-07 emails and the 2021 emails and noted the 2021 harassing emails ceased once Weste's phone was confiscated. After obtaining the search warrant, the FBI thoroughly searched Weste's phone, finding evidence Weste sent the 2021 harassing emails and leading to his indictment in this case.

At issue in the instant motion is whether FBI Agent Smith's initial warrantless searches of Weste's cell phone violated Weste's Fourth Amendment right to be free from unreasonable searches and seizures. The Government contends it did not because Weste did not have a reasonable expectation of privacy in the phone and the FBI would have inevitably discovered evidence found on the phone even if Agent Smith had not searched the phone before getting a warrant. For the reasons discussed herein, the Court agrees with the Government's position.

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Under the Fourth Amendment, a search and seizure conducted without a warrant issued on probable cause is *per se* unreasonable with

few exceptions to this rule. *See Katz v. United States*, 389 U.S. 347, 357 (1967). All evidence obtained from an unreasonable search or seizure must be suppressed under the fruit-of-the-poisonous-tree doctrine. *See Brown v. Illinois*, 422 U.S. 590, 602–03 (1975).

## ANALYSIS

The Government argues the FBI's warrantless searches of Weste's cell phone did not violate his Fourth Amendment rights because Weste did not have a reasonable expectation of privacy in the phone. It further argues, in the alterative, that if the search was unreasonable, the evidence obtained from Weste's cell phone is admissible because the inevitable discovery rule applies. The Court considers each of these arguments below.

### I.   Reasonable Expectation of Privacy

A Fourth Amendment privacy interest is infringed when the government violates a person's "reasonable expectation of privacy." *United States v. Turner*, 836 F.3d 429, 434 (5th Cir. 2016) (citing *United States v. Jones*, 132 S.Ct. 945, 949–50 (2012)). Establishing a defendant's reasonable expectation of privacy requires "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Id.* (quoting *Katz*, 389 U.S. at 361 (Harlan, J., concurring)). The Supreme Court has found that a privacy interest exists in the electronic contents of computers and cell phones. *See Riley v. California*, 134 S.Ct. 2473, 2485 (2014).

In this case, the Government argues Weste had a reduced expectation of privacy in the contents of his cell phone because he remained an inmate in BOP custody while residing at the Crosspoint halfway house. Indeed, the Supreme Court has held "prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). The *Hudson* Court

found a prisoner's privacy interests must yield to "paramount" interests of institutional security and a prisoner's loss of privacy is an inherent incident of confinement that is accepted by society. *Id*. at 528. The Supreme Court has gone on to extend its reasoning in *Hudson v. Palmer* to find probationers and parolees have a diminished expectation of privacy. *See United States v. Knights*, 534 U.S. 112, 119–20 (2001); *Samson v. California*, 547 U.S. 843, 850 (2006). The Government cites no binding authority to support its argument that inmates residing in halfway houses have a diminished expectation of privacy, and this Court finds none; however, logic dictates that inmates residing in halfway houses, like probationers and parolees, are included in the "continuum" of state-imposed punishments that result in a diminished expectation of privacy. *Id*.

To this point, a Seventh Circuit opinion addressing the issue is persuasive. In *United States v. Huart*, the Seventh Circuit had "little difficulty" finding a defendant residing in a halfway house "lacked both an objective and subjective expectation of privacy extending either to his phone or its contents." 735 F.3d 972, 975 (7th Cir. 2013). The *Huart* defendant challenged the suspicionless seizure and search of his phone while he was residing in a halfway house. *Id*. The Seventh Circuit noted the defendant signed a document acknowledging he was in BOP custody while residing in the halfway house and his property was subject to search. *Id*. The Seventh Circuit analogized to the Supreme Court's finding in *Samson v. California* that parole is "an established variation on imprisonment," concluding the *Huart* defendant's "stay at the halfway house was simply one particular way an inmate may serve a custodial sentence." *Id*. (citing *Samson v. California*, 547 U.S. at 850). The *Huart* Court, therefore, found that because the defendant remained in BOP custody while residing in the halfway house, his expectation of privacy was diminished and the government's suspicionless search was reasonable. *Id*.

Similar to the *Huart* defendant, Weste remained in BOP custody while residing at the Crosspoint halfway house. Indeed, like the *Huart* defendant, Weste signed an acknowledgment that, "Crosspoint residents are subject to searches of their person or property at any time." *See* ECF No. 24 at 10. Weste argues a statement in the same document saying searches may be conducted "to ensure facility safety and security" limits Crosspoint staff's authority to search to only those instances where facility security is at risk. *Id*. The Court disagrees with that reading. Facility safety and security is highlighted as one reason Crosspoint staff may search, but nothing in the document suggests it is the only reason. To the contrary, the statement that residents are subject to search "at any time" suggests authority to search is broad. This Court, therefore, finds the Government's search of Weste's phone was reasonable because Weste, like the *Huart* defendant, "lacked both an objective and subjective expectation of privacy extending either to his phone or its contents." *United States v. Huart*, 735 F.3d at 975.

Indeed, the FBI's search of Weste's phone in this case was even more justified than the *Huart* search because it was not suspicionless. As the Government notes, Weste's phone was seized because victim Amanda Stewart Rice recognized Weste's distinct voice in the recent series of harassing emails and FBI Agent Smith, who worked on the earlier case, made the same connection. The FBI, therefore, had probable cause to search Weste's phone before FBI Agent Smith's warrantless searches. This is the rationale the Government relies on to support its inevitable discovery theory. The Court's finding that Weste had no reasonable expectation of privacy in the phone is sufficient to conclude no Fourth Amendment violation occurred; however, in the interest of being thorough, the Court also considers the Government's alternative theory.

## II.   Inevitable Discovery

The Supreme Court's basis for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct is "to deter police from violations of constitutional and statutory protections." *Nix v. Williams*, 467 U.S. 441, 442–43 (1984). By the same token, the goal of the exclusionary rule is to put police "in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred." *Id*. at 445. Courts therefore apply the "independent source" doctrine to cases in which illegally obtained evidence is also discovered by means "wholly independent" of any constitutional violation. *Id*. at 443. The independent source doctrine does not directly apply here because the warrant affidavit contained both tainted and untainted evidence. In cases such as this, courts ensure the exclusionary rule does not put police in a worse position by applying the related, "inevitable discovery" rule.

The inevitable discovery rule provides that "otherwise suppressible evidence [will be admitted] if that evidence would inevitably have been discovered by lawful means." *United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010). It applies if "the Government demonstrates by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct and (2) that the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *Id*. Where, as here, a warrant affidavit contains both tainted and untainted evidence, courts apply a *Franks*-type analysis and "consider whether the warrant affidavit, once purged of tainted facts and conclusions, contains sufficient evidence to constitute probable cause for issuance of the warrant." *United States v. Restrepo*, 966 F.2d 964, 970 (5th Cir. 1992). Probable cause to search exists when, given the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place."

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). If the warrant affidavit, purged of tainted facts, provides probable cause, courts consider if the decision to seek a warrant was prompted by the illegal activity. *Restrepo* at 971.

      Here, the Court has already determined FBI Agent Smith's warrantless searches of the phone were lawful because Weste did not have a reasonable expectation of privacy in the phone. Assuming arguendo they were not, the Court separately finds the contested evidence would have been inevitably discovered by lawful means anyway. Agent Smith uncovered minimal information through his warrantless searches of the phone. Namely, Agent Smith discovered a receipt for Norton VPN masking software used to conceal the phone's IP address, some identifying information, and web browser history of interest. Indeed, in his warrant affidavit, Agent Smith referenced the Norton VPN software as one factor supporting his belief that the phone contained evidence of Weste's criminal activity. *See* ECF No. 24 at 32–33. However, the majority of the affidavit details evidence supporting Agent Smith's belief that the 2021 emails were consistent with Weste's 2006 and 2007 criminal activity. *Id*. at 28–32. Agent Smith also noted the 2021 emails were sent during the time period that Weste had access to the phone—that is, they began less than two months after he obtained the phone and immediately ceased when his phone was confiscated. *Id*. at 28, 33. Similarities between the 2006-07 and 2021 emails, combined with the timing of the 2021 emails, was sufficient for the magistrate judge to find probable cause that Weste's phone contained evidence of a crime. Agent Smith's warrant affidavit, purged of Norton VPN software information discovered in the warrantless search, "contains sufficient evidence to constitute probable cause for issuance of the warrant." *United States v. Restrepo*, 966 F.2d at 970. Furthermore, any evidence Agent Smith gathered through his cursory search of the phone would have been obtained once the magistrate judge approved the

warrant request. Finally, Agent Smith's decision to seek a warrant was prompted by AUSA Richardson's advice, not his warrantless searches of the phone.

The Court, therefore, finds evidence obtained from Weste's cell phone would have been discovered by lawful means in the absence of Agent Smith's warrantless searches of the phone. The FBI was actively pursuing an investigation into the connection between Weste's 2006-07 emails and the 2021 emails and, based on the email evidence it already had, the FBI had sufficient evidence to establish probable cause to search Weste's phone. Evidence found on the phone is admissible because it would inevitably have been discovered by lawful means. *United States v. Jackson*, 596 F.3d at 241.

## CONCLUSION

The Court finds the FBI's warrantless searches of Weste's phone did not violate his Fourth Amendment rights because Weste did not have a reasonable expectation of privacy in the phone. The Court further finds evidence obtained from the search of Weste's phone is admissible because it would have been inevitably discovered even in the absence of the warrantless searches. For these reasons, the Court **DENIES** Weste's Motion to Suppress. *See* ECF No. 24.

It is so ORDERED.
SIGNED this 31st day of July, 2023.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE